BENIGNO TRIGO ET AL., Plaintiffs and Appellants, *v.* JAMES R. BEVERLEY, ETC., ET AL., Defendants and Appellees.

No. 10427.   Argued May 9, 1951.—Decided June 6, 1951.

McConnell & Valdés for appellants.   José López Baralt, James R. Beverley, Alfonso Miranda Esteve, Guillermo Silva, Juan E. Géigel, and Emilio de Aldrey, for appellees.

MR. JUSTICE SNYDER delivered the opinion of the Court.

On March 31, 1948 Belén Sarah de Orbeta Viuda de Trigo executed an open will before Lic. Rafael Castro Fernández as notary.   After the death of the testatrix on March 2, 1949, three of her heirs brought suit in the district court for nullity of the will against the other heirs and against Lic. James R. Beverley, executor of the will and trustee of the portion of the estate left to two of the grandchildren of the testatrix.   After a trial on the merits, the lower court entered a judgment in favor of the defendants from which the plaintiffs appealed.

Section 630 of the Civil Code, 1930 ed., provides that "The following cannot be witnesses to wills: ...   7. The clerks, amanuenses, servants, or relatives within the fourth degree of consanguinity or second of affinity of the notary who authenticates the will."   The plaintiffs contend that the will involved in this case is null on the ground that Lics.

Rafael Rodríguez Lebrón and Iván Reichard, two of the witnesses, are clerks or amanuenses of notary Castro.

The parties stipulated that Beverley has a law office in San Juan of which he is the sole owner; that Castro, Rodríguez and Reichard are employees of Beverley from whom they receive a monthly fixed salary and a bonus; that for 1948 these attorneys received certain sums which are set forth in the stipulation as salaries and bonuses; that during 1948 the testatrix was a client of Beverley; that Beverley's office collected the corresponding fees for the execution of this will; and that no part of this fee went to Castro, who was compensated for all his services as an employee of that office by his salary and bonus.

Beverley testified that Castro, Rodríguez and Reichard are all his employees; that none of them has a fixed contract; that they have no right to the bonus but that he fixes it in his own discretion; that he distributes the work in his office and establishes the duties of the lawyers; that none of the lawyers in his office, including Castro, may require any of the other lawyers to assist him for a particular purpose; that "If Castro wants one of the boys to help him, he comes to me and says 'this is an important or big matter and I need the help of another lawyer.' Then I would ask, 'which lawyer do you prefer?' He would say Rodríguez, or López, or Iván, or other lawyers. This has occurred many times, that he has asked for the help of others, but through me"; that there is no hierarchy in his office; that as far as he is concerned, all the lawyers in his office are on the same level, although they receive different salaries, based on experience, skill and other factors.

In the light of the foregoing, we do not think the lower court erred in stating both in its findings of fact and in its conclusions of law that on the date of execution of the will Rodríguez and Reichard were not amanuenses or clerks of Castro, the notary who authenticated the will, but rather

that they as well as Castro were employees of Beverley. The plaintiffs argue that the higher salary and greater experience of Castro require us to hold that the other two lawyers were his subordinates in the hierarchy of attorneys which they allege exists in the office of Beverley. But we find no basis in the testimony for such a conclusion. We can conceive of a situation where a law office would be run with a chain of command like that found within a military theatre. Under those circumstances, a junior lawyer would be subordinate to his superior, who could give him orders, remove him and promote him. And that might be the most efficient way to operate a large law office. But here, once more in terms of a military analogy, the testimony shows that Beverley was more like a Chief of Staff with each of his lawyer-employees in charge of his own theatre of operations, namely, the cases assigned to him by Beverley.

Castro did not hire and could not fire Rodríguez and Reichard. Nor could he direct them to work for him on a particular matter. At the most he could request their assistance in a particular case only through Beverley. Under these circumstances, we cannot hold that they were in any way subordinate to him, in the sort of hierarchy envisaged by the plaintiffs, despite the fact that Castro had more experience, handled more important matters, and received a larger salary and bonus than they did. In short, Castro, Rodríguez and Reichard were all fellow-employees of Beverley and therefore subordinate to the latter; but none of them was subordinate to each other. The lower court therefore did not err in holding that Rodríguez and Reichard were not clerks or amanuenses of Castro, the notary who authenticated the will, under § 630 of the Civil Code.

This is a case of first impression in this Court. None of the cases cited by the parties from the Supreme Court of Spain is decisive on this point. However, we do not agree with the plaintiffs that the Supreme Court of Spain has held

that the prohibition of § 630 applies to persons "connected" in any way with the notary. See Judgments of July 6, 1914, December 1, 1927, and December 26, 1932. It is true that in the latter the Supreme Court of Spain spoke of the disqualified witnesses as being "connected" with the notary. But the facts of that case were that the witnesses were amanuenses or copyists who worked for the notary and were subject to his orders. We think the Supreme Court of Spain meant to confine its holding to that situation and not to widen the obvious meaning of § 630 to include not only true clerks, amanuenses, or servants, but also anyone in any way "connected" with the notary. See 2 *Enciclopedia Jurídica Española* 690; 10 *id.* 755; 5 Manresa, *Comentarios al Código Civil Español*, 5th ed., p. 446.

Once we have reached the conclusion that Rodríguez and Reichard were not disqualified from acting as witnesses to the will, the other errors fall by the wayside. These assignments are that the lower court erred (1) in refusing the petition of the plaintiffs to consider the complaint as amended to conform to the proof, (2) in refusing to admit in evidence an exhibit showing that Rodríguez and Reichard acted as witnesses to documents executed before notary Castro on a number of other occasions, (3) in stating that the prohibition involved herein does not apply to attorneys, and (4) in stating that the testimony of Rafael A. González, one of the witnesses to the will, does not prove the allegations of the complaint.

The first two of these errors relate to an effort by the plaintiffs to show an established practice by Castro to use Rodríguez and Reichard as witnesses to his notarial documents. But once we have held that they were proper witnesses, the existence of this alleged practice becomes irrelevant. We need not examine the dictum of the lower court assailed in the third error inasmuch as we have held that, even applying § 630 to attorneys, Rodríguez and

Reichard were not amanuenses or clerks of Castro and therefore were not disqualified to act as witnesses under § 630. The plaintiffs themselves do not discuss the error with reference to the testimony of Rafael A. González. We therefore find it unnecessary to examine it.

The plaintiffs argue that to affirm the judgment in this case is to condone a practice where the witnesses to a will work in the same law office as the notary who authenticates the will and would therefore be unlikely to testify after the death of the testator that the formalities required by law did not take place when the will was executed. But if this is an undesirable practice, the remedy lies in the hands of the Legislature, not ours.

The judgment of the district court will be affirmed.